# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>GEORGE HENRY GAMBLE (1),<br><br>                                    Defendant. | Case No.:  14-CR-3141 DMS<br><br>**ORDER DENYING MOTION FOR SENTENCING MODIFICATION UNDER 18 U.S.C. § 3582(C)** |

Before the Court is Defendant George Henry Gamble's Motion for Compassionate Release.  Plaintiff United States of America filed a response and Defendant filed a reply.  Defendant also thereafter filed two addenda in support of his motion.  For the following reasons, Defendant's motion is denied.

## I.

## BACKGROUND

On February 26, 2016, Defendant was sentenced to 120 months for violating 21 U.S.C. §§ 841 and 846, Conspiracy to Distribute Methamphetamine.  (Judgment, ECF No. 132.)   Pursuant to his plea agreement, Defendant admitted conspiring to distribute methamphetamine from at least June 11, 2013 to November 14, 2013.  (Pre-Sentence Report ("PSR"), ECF No. 119, at ¶ 5.)  During that time, Defendant sold methamphetamine

1

to a confidential informant on four separate occasions and was intercepted discussing distribution of methamphetamine and firearms with co-defendant Gary Antoine.  The investigation concluded when Defendant was arrested on November 14, 2013, after agents intercepted Defendant on a phone call with his brother threatening to kill a police officer. Defendant stated:

> I'm going to kill this white … [police officer] … trust what I tell ya … I got two AKs (high power rifles) right now and when the time is right, I'm gonna catch him and I'm gonna dump (shoot) on his car. I'm gonna kill him … I swear.

(PSR at ¶ 7.)  Agents obtained a search warrant and searched Defendant's motel room where they found two bags containing 53.7 grams of methamphetamine, several plastic baggies, .357 ammunition, and a digital scale.  (*Id.*)  Agents also found a handgun holster, a firearm cleaning kit, a surveillance camera, and 3.67 grams of marijuana.  (*Id.*)  No assault rifles or other firearms were found at the time, but agents intercepted a conversation where Defendant told co-defendant Antoine he was waiting for money to purchase AK-47 rifles. (*Id.* at ¶¶ 6, 9.)  In addition to the subject offense, Defendant has five criminal convictions, including offenses for drugs, burglary and assault with great bodily injury with a weapon. (*Id.* at ¶¶ 32, 37.)

Defendant is 53 years old and suffers from diabetes, high blood pressure, latent tuberculosis, major depressive disorder, and cardiovascular disease.  (Mot. at 1-2; Supp. Br. at 2.)  The Centers for Disease Control and Prevention (CDC) identifies serious heart conditions and diabetes as conditions placing an individual at increased risk of severe illness from COVID-19.  *See Groups at Higher Risk for Serious Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.  Defendant is currently incarcerated at the Bureau of Prisons ("BOP") facility at Terminal Island, CA, which has one of the highest rates of COVID-19 infection in the country.  His expected release date is April 11, 2023.  (Ex. A to Mot.)  In April 2020, Defendant tested positive for COVID-19, but has since recovered

and is in stable condition. (Opp'n at 6.) Due to the spread of COVID-19 in Terminal Island, Defendant now requests that the Court modify his sentence under 18 U.S.C. § 3582(c) and convert his 120-month sentence to time-served, with home detention as a condition of his term of supervised release.

## II.

## DISCUSSION

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). The First Step Act ("FSA") is such a statute. *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018). Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow the defendant to move the district court for compassionate release after exhausting the Bureau of Prison ("BOP") process.

Section 3582(c) of Title 18 of the United States Code provides that a court may not modify a term of imprisonment except "upon motion of Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Administrative exhaustion is a prerequisite to filing the motion in district court, and "[e]xhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." *United States v. Mondaca*, No. 89-cr-0655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal quotation marks and citations omitted). Here, Defendant petitioned the BOP for release over thirty days ago. (Mot. at 6.) The United States does not dispute that Defendant has exhausted his administrative remedies. Accordingly, the Court may address the motion on its merits.

The FSA allows a district court to modify a sentence and grant compassionate release if it finds "extraordinary and compelling reasons" warrant such a reduction, the reduction

14-CR-3141 DMS

complies with 18 U.S.C. § 3553(a), and the defendant "is not a danger to the safety of any other person or to the community[.]"   *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("U.S.S.G") § 1B1.13.   Defendant contends he meets the foregoing criteria.   As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction.   *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

### 1. Extraordinary and Compelling Reasons

Defendant argues he is eligible for compassionate release because his underlying health conditions make him particularly vulnerable to COVID-19 and the virus is spreading throughout Terminal Island. (Mot. at 10.)   The Sentencing Guidelines provide that extraordinary and compelling reasons may exist for compassionate release where a defendant suffers from, among other conditions, "a serious physical or mental condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G § 1B1.13, cmt n.1(A)(i)(I).   Defendant has diabetes and heart disease—conditions the CDC has declared will increase the risk of serious illness from COVID-19.   Defendant also notes he has Post-Traumatic Stress Disorder ("PTSD") after witnessing his wife's suicide.  (Mot. at 11.)

The United States points out that Defendant has already tested positive for COVID-19 and recovered but acknowledges the risk or reinfection.  (Opp'n at 6-7.)  However, the United States does not dispute that Defendant's medical conditions, combined with the outbreak of COVID-19 in Terminal Island, constitute "extraordinary and compelling circumstances."  (*Id.* at 8-9.)  Notwithstanding these circumstances, the United States contends Defendant is not entitled to compassionate release because he has neither demonstrated that he is not a danger to others or the community nor that the § 3553 factors weigh in favor of release.  (*Id.* at 9.)  The Court agrees.

### 2. Danger to Others or the Community

Even where extraordinary and compelling reasons exist, the court must consider whether the defendant is "a danger to the safety of any other person or to the community,

14-CR-3141 DMS

as provided in 18 U.S.C. § 3142(g)[.]"  U.S.S.G. § 1.B1.13(1)(A), (2) cmt. n. 1.  To make this assessment, the Court is directed to the factors set out in § 3142(g), including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose.  These factors are addressed in turn and overlap with the § 3553(a) factors.

While Defendant was convicted of conspiracy to distribute methamphetamine, a non-violent offense, the Government contends Defendant poses a danger to the community because of the circumstances of the crime and Defendant's criminal history and past violent behavior.  As noted, Defendant was arrested after agents intercepted him discussing his intent to murder a police officer.  (PSR at ¶ 7 ("I got two AKs right now and when the time is right, … I'm gonna kill [that police officer]. … I swear.")  A subsequent search of Defendant's hotel room revealed drugs, plastic baggies, a digital scale, handgun ammunition and holster and other indicia of drug sales.  Defendant argues that the alleged "threat" occurred during extenuating circumstances and that no evidence was ever uncovered showing Defendant intended to carry out his threats.  (Reply Br. at 2-3.) Defendant contends he made the statements only in response to witnessing his wife's suicide and subsequently being interrogated and demeaned by police over her death, and not because he intended to murder the police officer.  (*Id.* at 3-4.)  Defendant also notes he developed PTSD and had suicidal ideations after witnessing the death of this wife.  (*Id.* at 6-7.)

Defendant was never charged with a crime arising out of the intercepted call with his brother.  Nonetheless, Defendant's statements regarding acts of violence on a police officer were not made in isolation.  The day before the call in question, Defendant told co-defendant Antoine that he had just purchased two AK-47 rifles and would provide one to him.  (PSR at ¶ 6.)  Antoine told Defendant he was going to use the rifle to commit a

14-CR-3141 DMS

robbery and that he had a "cool little crew" to do the robbery.  (*Id.*)  Defendant also told Antoine that he provided a .357 handgun to Crip gang member, Randy Graves, (*id.*), who was prosecuted in a related case involving six homicides.  *See United States v. Graves, et al.,* No. 3:14-cr-1288-DMS-1.  Defendant also discussed with Antoine "getting rid" of a rival gang member who was competing with them and taking away their drug customers.  (PSR at ¶ 5.)  Finally, Defendant and Antoine discussed "pimping women" in different states, with Defendant stating he kept prostitutes supplied with drugs as long as they "make their quota."  (*Id.*)

In light of these circumstances, Defendant was arrested on this case on November 14, 2013.  These events reveal an individual deeply entrenched in drug dealing, firearms, and a culture of violence.

Defendant also has numerous prior convictions from 1988 to June 1995, including for drugs, burglary, and assault with great bodily injury involving a weapon.  The assault conviction involved a "fight with a guy before stabbing him" while Defendant was high on methamphetamine.  (PSR at ¶ 38.)  Defendant was sentenced to seven years imprisonment for that offense and was paroled on February 25, 1999.  (*Id.* at ¶ 36.)  Defendant also has numerous prior arrests from 1986 through 1993, involving vandalism, drugs, burglary, child stealing, terrorist threats and battery.  (*Id.* at ¶ 46.)

Defendant notes the assault conviction, while serious, occurred 25 years ago and that he has since rehabilitated.  (Reply Br. at 2.)  He points out that the BOP has placed him in the "minimum" category for general recidivism and violent recidivism risk, indicating the BOP "believe[s] h[e] is at low risk to be a danger to the community."  (Second Supp. Br. at 2.)  Consistent with his favorable classification, Defendant points out that he has received counseling for anger management and that his PTSD and depression are "considered resolved."  (Supp. Br., ECF No. 264, at 2.)  Defendant cites a BOP report showing that his Major Depressive Order is "in full remission" and his PTSD is "resolved."  (*Id.* at 2.)  Defendant is to be credited for the progress he has made while in custody.

On balance, however, Defendant has failed to show he would not present a danger to others or the community if released. Defendant has made progress in custody through treatment and counseling, but he has a demonstrated history of crime and criminal proclivity. While Defendant's prior convictions and arrests are dated, they are punctuated by a long period of incarceration in 1995 and the current offense in 2013 which involved several months of drug trafficking. Defendant also has struggled with substance abuse and was using methamphetamine prior to his arrest for the present offense. (PSR at ¶¶ 74-77.) Further, the present offense is one that can be carried out again, with relative ease, given Defendant's contacts in the community and access to cell phones and other communication devices.

### 3. § 3553(a) Factors

Finally, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1),(6).

As discussed, Defendant's offense is serious, and particularly so considering the relevant conduct leading up to the arrest. In light of Defendant's criminal history and current crime, he was not safety valve eligible at the time of sentencing; rather, he was subject to a 10-year minimum sentence, which reflects the seriousness of the offense, the

14-CR-3141 DMS

need to deter Defendant and others, as well as the need to protect society.  All of these factors are relevant here and served by the sentence imposed.

Defendant contends that he agreed to a total offense level of 29 as part of his plea agreement, and at a criminal history category of II, his guideline range would have been 97 to 121 months but for the mandatory minimum of 120 months.  (Mot. at 12.)  If the Court had discretion and sentenced him to 97 months, Defendant argues, he would soon be in a halfway house.  (*Id.*)  The Court, however, did not have discretion and sentenced Defendant to what was required by law, a minimum of 120 months.  The Government contends the § 3553(a) factors weigh against release because Defendant still has four years, approximately 40 percent of his sentence, left to serve.  (Opp'n at 11.)  In response, Defendant argues he only has two years and nine months remaining on his sentence because his expected release date is April 11, 2023.  Nevertheless, the time remaining on Defendant's sentence is significant and warranted under § 3553(a).

Many of Defendant's arguments in favor of release relate to trauma and PTSD as justifications for past violent language and criminal behavior.  Defendant has made strides in addressing that trauma and he is to be commended for his progress, but mental health issues cannot serve to excuse the conduct at issue or mitigate it to the degree requested by Defendant in the present motion.  And although the Court is sympathetic to the risks Defendant faces in light of COVID-19, Defendant is receiving excellent medical care and mental health treatment in prison, thus serving the important interests of § 3553(a)(2)(D).  Indeed, Defendant contracted COVID-19 while in custody, and through the medical treatment provided by the BOP, he has recovered.  Defendant has also received mental health treatment for PTSD and depression.  This treatment, as part of Defendant's sentence, serves the important goal of rehabilitation.  Under § 3553(a), Defendant's 10-year sentence is not greater than necessary to address the overarching goals of punishment, deterrence, protection of society and rehabilitation.  These factors weigh against releasing Defendant at this time.

/ / /

14-CR-3141 DMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for compassionate release is respectfully denied.

**IT IS SO ORDERED.**

Dated:  July 20, 2020

Hon. Dana M. Sabraw
United States District Judge

14-CR-3141 DMS